UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TYRONE FERGUSON, SR.,

    Plaintiff,

    v.                                      Case No. 10-C-890

METALCUT PRODUCTS,

    Defendant.

**DECISION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I. PROCEDURAL BACKGROUND**

This action was commenced on October 12, 2010, when the plaintiff, Tyrone Ferguson, Sr. ("Ferguson"), filed a complaint in the United States District Court for the Eastern District of Wisconsin alleging that Metalcut Products ("Metalcut" or "defendant") violated 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, by discriminating against Ferguson in the workplace and terminating his employment in retaliation for complaints about racial discrimination. In his Amended Complaint, Ferguson claims that co-workers subjected him to a hostile work environment and discriminated against him because of his race. Ferguson alleges that his supervisor knew about the discriminatory acts, but did nothing to remedy them. Ferguson also claims that the defendant retaliated against him for complaining to management about racial discrimination and unlawfully terminated his employment.

This court has jurisdiction over this action pursuant to 28 U.S.C. § 1343(4), and venue is proper in the Eastern District of Wisconsin pursuant to 42 U.S.C. § 2000e-5(f)(3). All parties have

consented to the exercise of jurisdiction by a magistrate judge. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b)(1).

Currently pending before the court is the defendant's motion for summary judgment, which was filed on December 15, 2011.[1] Ferguson filed his response on February 22, 2012[2] and no reply has been filed. For the reasons that follow, the defendant's motion for summary judgment will be granted.

## II. FACTUAL BACKGROUND

The defendant is a machine shop that manufacturers machinery parts and employed between seventy and one hundred people in 2008. (Defendant's Proposed Findings of Fact ("DPFOF") ¶ 2, ECF No. 28; Equal Rights Div. Hearing, July 7, 2009 ("ERDH"), 18:19–22, ECF No. 32.) Ferguson is an African American male who worked for the defendant three separate times, beginning in 1995, 1997, and 2006. (DPFOF ¶ 4, ECF No. 32.) Starting in 2006, Ferguson worked as a C&C Operator, which involved cutting sheets of metal. (ERDH 18:18, ECF No. 32.) He worked under the supervision Operations Manager, Mike Briesemeister ("Briesemeister"), who is Caucasian. (DPFOF ¶ 2, 4–5, ECF No. 28.)

In 2006, Ferguson had a verbal argument with Mike Osborne ("Osborne"), who is a shift supervisor for the defendant. (DPFOF ¶ 8, ECF No. 28.) Ferguson's machine broke down and Ferguson retrieved Osborne to correct the problem. (ERDH 42:13–44:7, ECF No. 33.) Osborne and

---

[1] The defendant originally filed its motion for summary judgment on September 1, 2011. (ECF No. 27.) However, the defendant did not comply with Civil L.R. 56(a) requiring the defendant to include certain statements and copies of relevant rules as part of its motion when dealing with a pro se plaintiff. The court therefore denied the original motion to dismiss without prejudice and provided the defendant an opportunity to re-file its motion.

[2] The plaintiff did not file a response by the deadline, so the court issued an order requiring Ferguson to file a response by February 27, 2012, or face dismissal of the action under Civil L.R. 41(c) for lack of prosecution.

another male began teasing Ferguson, but said nothing racial. (ERDH 45:2–10, ECF No. 33.) Osborne fixed the machine and left the area. (ERDH 46:12–23, ECF No. 33.) About twenty minutes later the machine broke again. (ERDH 46:12–23, ECF No. 33.) Ferguson again sought Osborne's assistance. (ERDH 47:13–15, ECF No. 33.) Osborne began teasing Ferguson again, but nothing was racial in character. (ERDH 47:13–15, ECF No. 33.) During the course of the fight, Ferguson called Osborne a "bitch," which caused Osborne to get very upset and storm off. (ERDH 48:3–8, ECF No. 33.) Ferguson and Osborne spoke with a supervisor, Mike Stern, about the event, and Ferguson was sent home while Osborne remained at work. (ERDH 41:24–42:1, 50:5–10, ECF No. 33.) Upon returning to work, Ferguson was moved to the first shift and Osborne remained on second shift. (ERDH 52:15–53:5, ECF No. 34.)

Ferguson admits that neither Briesemeister nor Osborne have said anything racially discriminatory toward Ferguson during Ferguson's employment. (ERDH 25:21–23, ECF No. 32; ERDH 38:21–23, ECF No. 33.) However, Ferguson claims that Briesemeister knew of racist comments made by other employees at the company and did not address the problem. (ERDH 26:4–13, ECF No. 33.) Ferguson states that Ron, whose last name was not given, Ike Thomas ("Thomas"), and Rob Anderson ("Anderson") all made racist comments, which were reported to Briesemeister, but Briesemeister did nothing to address the comments. (ERDH 26:14–27:6, ECF No. 33.) Thomas is African American, but Ron and Anderson are Caucasian. (ERDH 27:1–6, ECF No. 33.) Ferguson claims that Ron made numerous racial comments directed toward Ferguson while they worked together, but Ferguson never reported the comments to Briesemeister. (ERDH 55:13–56:6, ECF No. 34.) Thomas also made comments in front of Briesemeister, such as calling Ferguson a "nigger," but Ferguson did not complain about the comments until after his termination. (DPFOF ¶ 7, ECF No. 28, ERDH 66:22–68:24, ECF No. 34.)

3

In 2007, Ferguson complained to Briesemeister that Anderson was telling racist jokes at work. (DPFOF ¶ 5, ECF No. 28; ERDH 32:1–8, ECF No. 33.) After Ferguson's complaint to Briesemeister, Briesemeister held a meeting with several employees, including Thomas and Anderson, and told the employees to stop joking around. (DPFOF ¶ 5, ECF No. 28.) Ferguson made no other complaints to Briesemeister about racist conduct. (DPFOF ¶ 6, ECF No. 28; ERDH 34:24–35:3, ECF No. 33.)

On Friday, April 18, 2008, John Weitkum ("Weitkum"), Ferguson's Caucasian "lead person," spoke with Ferguson about the frequency and severity of "mis-loads" that have occurred when employees load parts into the machines. (DPFOF ¶ 12–13, ECF No. 28.) Weitkum told Ferguson that any future mis-loads would result in suspensions or terminations. (DPFOF ¶ 13, ECF No. 28.) Ferguson responded by saying that he did not like working at Metalcut and that he would mis-load a part if that would get him fired. (DPFOF ¶ 13, ECF No. 28.) Weitkum took the comment seriously (DPFOF ¶ 14, ECF No. 28), but Ferguson claims that he was being sarcastic. (ERDH 61:24–62:13, ECF No. 34.) Later that day, a mis-loaded part was found by the second shift employees on a machine that Ferguson was assigned to earlier in the day. (DPFOF ¶ 14, ECF No. 28.)

On Monday, April 21, 2008, Briesemeister decided to terminate Ferguson based on the mis-loaded part. (DPFOF ¶ 16, ECF No. 28.) Ferguson spoke with Briesemeister in his office and claimed that he did not mis-load the part, but Briesemeister decided to terminated Ferguson despite Ferguson's denial. (ERDH 63:7–11, ECF No. 34.)

On May 5, 2008, Ferguson filed a complaint with the Wisconsin Equal Rights Division alleging discrimination in the terms and conditions of employment due to race and alleging that he was terminated due to race. (DPFOF ¶ 17, ECF No. 28.) The complaint was dismissed by an Administrative Law Judge on May 5, 2010. (DPFOF ¶ 18–21, ECF No. 28.) The EEOC also

4

investigated Ferguson's charge and issued a Right to Sue letter on September 7, 2010. (DPFOF ¶ 22, ECF No. 28.)

### III. SUMMARY JUDGMENT STANDARD

A district court shall grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). However, a mere scintilla of evidence in support of the nonmovant's position is insufficient. *See Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable

5

inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "'[I]n the light most favorable' . . . 'simply means that summary judgment is not appropriate if the court must make a choice of inferences.'" *Harley-Davidson Motor Co., Inc. v. PowerSports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) (quoting *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997)).

## IV. DISCUSSION

Title VII provides that "it shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Ferguson contends that he was discriminated against in violation of Title VII based on his race. Based on the Amended Complaint, Ferguson appears to make four interrelated arguments: (1) that he was subjected to a hostile work environment; (2) that he was discriminated against; (3) that he was retaliated against for complaining about discrimination; and (4) that he was unlawfully terminated based on his race. The court notes that Ferguson's claims are interrelated because Ferguson contends that he was harassed, discriminated against, and terminated because of his race. Ferguson also contends that the defendant retaliated against him by terminating his employment.

### A. Hostile Work Environment

Ferguson claims that he was subjected to a hostile work environment during Briesemeister's tenure as the Operations Manager. To survive the defendant's summary judgment motion on this claim, Ferguson must demonstrate that (1) his work environment was both objectively and subjectively offensive; (2) that the harassment was based on his race; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability. *Vance v. Ball State Univ.*, 646

F.3d 461, 469 (7th Cir. 2011). To determine whether a working environment is "hostile," courts may consider "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009).

Ferguson points to two incidents in which racist comments were made. First, Anderson made racist jokes, which Ferguson complained about to Briesemeister. Briesemeister immediately held a meeting to address the jokes and demanded that the employees stop telling such jokes. Second, Ferguson claims that Thomas, also an African American, called Ferguson a "nigger" in front of Briesemeister, but that Briesemeister did nothing to address the comment. Ferguson never complained about Thomas's racist comments to Briesemeister until after Ferguson's termination.

Based on the limited evidence of discriminatory conduct, the court finds that Ferguson was not subjected to a hostile work environment. Two isolated incidents do not demonstrate that the work environment was objectively offensive. The incidents were not severe, and the sporadic and limited nature of the racist comments demonstrate that such treatment was not pervasive. In addition, Thomas, who called Ferguson an inappropriate name, is the same race as Ferguson and is also Ferguson's cousin. The evidence further demonstrates that Ferguson complained only once to Briesemeister and Briesemeister addressed the problem immediately. Thus, there is no basis for employer liability.

Ferguson has not submitted sufficient evidence to permit a reasonable jury to find that he was subjected to a hostile work environment because of his race. Accordingly, the defendant's motion for summary judgment with respect to Ferguson's hostile work environment claim will be granted.

**B. Discrimination**

Ferguson also claims that the defendant discriminated against him because of his race. To prevail on his race discrimination claim under Title VII, Ferguson must demonstrate the defendant's discriminatory intent under either the "direct" or "indirect" method of proof. *See Silverman v. Bd. of Educ. of the City of Chicago*, 637 F.3d 729, 733 (7th Cir. 2011).

A plaintiff proceeding under the direct method of proof may rely on two types of evidence: direct evidence or circumstantial evidence. *See id.* Direct evidence is evidence "that would prove the fact in question—the discriminatory intent—without reliance on inference or presumption." *Id.* at 733-34 (citing *Venturelli v. ARC Community Servs., Inc.*, 350 F.3d 592, 599 (7th Cir. 2003)). In other words, direct evidence is evidence that may "'be interpreted as an acknowledgment of discriminatory intent by the defendant.'" *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005) (quoting *Troupe v. May Dep't. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). Simply stated, "[d]irect evidence 'essentially requires an admission by the decisionmaker that his actions were based upon the prohibited animus.'" *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir.2000)).

A plaintiff may also prevail under the direct method of proof by establishing a "convincing mosaic" of circumstantial evidence that "would allow a jury to *infer* intentional discrimination by the decision-maker." *Silverman*, 637 F.3d at 734. Circumstantial evidence "may come in the form of 'suspicious timing, ambiguous statements oral or written, [or] behavior toward or comments directed at other employees in the protected group.'" *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 272 (7th Cir. 2004) (quoting *Troupe*, 20 F.3d at 736). The circumstantial evidence, however, "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

A plaintiff proceeding under the indirect method of proof, as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), must generally show that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated individuals who are not members of a protected class. *See Ineichen v. Ameritech*, 410 F.3d 956, 959 (7th Cir. 2005). "The failure to establish any one of the initial four elements [of a prima facie case] defeats a discrimination claim." *Bio v. Federal Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005).

If the plaintiff establishes a prima facie case, the burden of production then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the decision. *McDonnell Douglas*, 411 U.S. at 802. Then, if the defendant articulates a legitimate, nondiscriminatory reason, the burden of production shifts back to the plaintiff to show that the defendant's explanation was pretextual. *Ineichen*, 410 F.3d at 961. Pretext requires more than a showing that the decision was "mistaken, ill considered or foolish . . . so long as [the employer] honestly believe[s] [in the reason presented], pretext has not been shown." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). "Pretext means a dishonest explanation, a lie rather than an oddity or an error,'" *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005) (quoting *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir.2000)), or "'deceit used to cover one's tracks,'" *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 730 (7th Cir.2001) (citing *Kulumani*, 224 F.3d at 684).

In this case, it is unclear under which method of proof Ferguson is proceeding. However, it is clear that he has not presented any evidence establishing discriminatory intent via the direct method of proof. There is no direct evidence establishing that Briesemeister acted because of any impermissible animus. In fact, Ferguson himself admits that Briesemeister never made any

9

discriminatory remarks toward Ferguson. Further, there is no evidence from which a rational jury could interpret an acknowledgment of discriminatory intent by Briesemeister.

Likewise, there is no evidence in the record from which a jury could *infer* intentional discrimination by Briesemeister. Just as direct evidence must lead to the inescapable conclusion that the defendant acted based on an impermissible animus, so too must circumstantial evidence point to a discriminatory reason for the employer's actions. Ferguson has not presented any discriminatory reason for how Briesemeister treated him. To be sure, Briesemeister hired Ferguson three times, despite Ferguson's decision to quit his positions with Metalcut two times before. Assuming that the actions of which Ferguson complains constitute adverse actions, the evidence simply does not permit an inference that such actions were the result of intentional racial discrimination.

However, Ferguson can still defeat the defendant's summary judgment motion on his discrimination claim if he can establish a prima facie case of discrimination by way of the indirect method of proof. Here, the parties do not dispute that Ferguson is a member of a protected class and that he has suffered at least one adverse employment action, that being termination. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008) (finding termination to be an adverse action).[3] The parties do dispute whether Ferguson was meeting Metalcut's legitimate performance expectations and whether Ferguson was treated less favorably than similarly situated individuals who are not members of the protected class. The court will not address whether Ferguson was meeting Metalcut's

---

[3] Adverse employment actions for purposes of the federal antidiscrimination statutes generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge. *See Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744-45 (7th Cir. 2002). Ferguson has not presented evidence establishing adverse action under the second category. Whether Ferguson suffered unbearable changes in job conditions due to a shift-change is disputed, but need not be addressed for purposes of the discrimination analysis because he has already established adverse action by way of termination.

expectations, however, because Ferguson fails to demonstrate that similarly situated Caucasian employees were treated more favorably than Ferguson.

"All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination." *Filar v. Bd. of Educ. of City of Chicago*, 526 F.3d 1054, 1061 (7th Cir. 2008). The "similarly situated" prong serves to eliminate other possible explanatory variables, "such as differing roles, performance histories, or decision-making personnel, which helps to isolate the critical independent variable"—discriminatory animus. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008). Whether a comparator is similarly situated is "usually a question for the fact-finder," and summary judgment is appropriate only when "no reasonable fact-finder could find that plaintiffs have met their burden on the issue." *Srail v. Village of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009).

A plaintiff must show that similarly situated employees were "comparable to the plaintiff in all *material* respects." *Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006).

> The similarly situated inquiry is a flexible, common-sense comparison based on 'substantial similarity' rather than a strict 'one-to-one mapping between employees,' but still requires 'enough common features between the individuals to allow [for] a meaningful comparison.' A meaningful comparison is one which serves 'to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps to isolate the critical independent variable: complaints about discrimination.'

*Argyropoulos*, 539 F.3d at 735 (quoting *Humphries*, 474 F.3d at 405). Thus, to evaluate whether two employees are directly comparable, courts consider all of the relevant factors, which most often include whether the employees "(I) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered the latter factors in making the personnel decision.'" *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 810 (7th Cir. 2011) (quoting

11

*Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003)). Importantly, "courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions." *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 693 (7th Cir. 2005).

Ferguson contends that there are similarly situated employees who violated the defendant's policies but were not fired. First, Ferguson recounts an incident in which two Caucasian coworkers were involved in a physical altercation, but both men kept their jobs. (Def.'s Br. 4, ECF No. 52.) Second, Ferguson states that Briesemeister knew that Ken Davis ("Davis"), who is also an African American, was drinking on the job, but Davis was not fired. (ERDH 64:15–65:11, ECF No. 34) Last, Ferguson claims that after the verbal altercation with Osborne, Ferguson was moved to a different shift while Osborne, who is Caucasian, was permitted to keep the same shift.

The first two examples fail to adequately demonstrate that similarly situated employees, who are not members of the protected class, were treated differently. The fight between the two Caucasian men is devoid of any substantive facts and unsupported by the record. Without detail about the mens' positions with Metalcut and the supervisors they reported to, the court cannot find that the men were similarly situated to Ferguson. Additionally, the allegation regarding Davis relates to a member of the same protected class. Thus, neither of these examples assists Ferguson in demonstrating that he was discriminated against.

However, Briesemeister's resolution of the altercation between Ferguson and Osborne requires further discussion. At first glance, this appears to be a case of different treatment of two individuals, one African American and one Caucasian, in which the Caucasian individual was treated more favorably. However, a closer look into the individuals' job positions demonstrates that Ferguson and Osborne were not similarly situated because Osborne was a shift supervisor at Metalcut. In fact, Osborne was Ferguson's shift supervisor on the day of the altercation. This demonstrates that

Ferguson and Osborne did not have similar positions and were not subject to the same supervisor. Thus, the employer could legitimately treat the two men differently based on their positions. *See Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) ("In the ususal case a plaintiff must at least show that the comparators (1) 'dealt with the same supervisor,' (2) 'were subject to the same standards,' and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'") (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008)).

Ferguson has failed to demonstrate that any similarly situated employees who are not members of a protected class were treated differently. It is clear that no reasonable jury could find that the similarly situated requirement has been satisfied. Thus, the defendant is entitled to summary judgment on Ferguson's discrimination claim.

**C. Retaliation**

Ferguson claims that the defendant retaliated against him for complaining about the perceived racial harassment and discrimination to which he was subjected. Specifically, Ferguson claims that he was terminated not because of misconduct, but because he lodged complaints against other employees for their racist comments.

Like discrimination, retaliation may be established by either the direct or indirect method of proof. Once the employee establishes his *prima facie* case, the burden shifts to the defendant to establish a non-individious reason for the action. The burden then shifts back to the plaintiff to show that the defendant's reason was pretextual. *Stephens v. Erickson*, 569 F.3d 779, 786-87 (7th Cir. 2009).

To establish retaliation under the direct method of proof, Ferguson must show that (1) he engaged in activity protected by Title VII; (2) his employer took an adverse employment action

against him; and (3) there was a causal connection between his protected activity and the adverse employment action. *See Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 673 (7th Cir. 2011). There is no question that Ferguson engaged in protected activity. Ferguson offered evidence indicating that he complained of race discrimination to his superior sometime in 2007. This informal complaint constitutes protected activity. *See Coleman v. Donahoe*, 667 F.3d 835, 859–60 (7th Cir. 2012) (complaints of race and sex discrimination before filing charges qualify as protected activity).

Without a doubt, Ferguson's termination was an adverse employment action. As previously discussed, adverse employment actions can also take two other forms. Adverse employment actions for purposes of the federal antidiscrimination statutes may also result (1) from transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects and (2) from unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge. *See Herrnreiter v. Chicago Housing Auth.*, 315 F.3d 742, 744-45 (7th Cir. 2002). Ferguson has not offered evidence to establish that the shift change caused his skills to atrophy, thereby reducing future career prospects or that the change in job conditions were unbearable. Instead, Ferguson completed the same or similar tasks, but did so during the first shift instead of the second shift. Because the court finds that the shift change was not an adverse employment decision, the court will address only Ferguson's termination.

Ferguson's retaliation claim turns on whether he can show causation between his protected activity and the adverse employment action. Ferguson can show causation by presenting direct evidence, that is, an acknowledgment of discriminatory intent that does not require support from inferences, *see Rudin v. Lincoln Land Community College*, 420 F.3d 712, 720 (7th Cir. 2005), or by presenting a convincing mosaic of circumstantial evidence that would permit the same inference without the employer's admission, *see Treadwell v. Office of Illinois Secretary of State*, 455 F.3d 778,

781 (7th Cir. 2006). Because Ferguson has presented no direct evidence of retaliation, the court turns to whether he has presented circumstantial evidence.

Circumstantial evidence may fall into three categories.

One includes "suspicious timing, ambiguous statements oral or written, . . . and other bits and pieces from which an inference of [retaliatory] intent might be drawn." Another is "evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently." Another type is "evidence that the employer offered a pretextual reason for an adverse employment action."

*Coleman*, 667 F.3d at 860 (internal citations omitted). "'Each type of evidence is sufficient by itself (depending of course on its strength in relation to whatever other evidence is in the case) to support a judgment for the plaintiff; or they can be used together.'" *Id.* (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)).

Here, Ferguson asserts only that the defendant offered a pretextual reason for his termination.[4] He argues that because the defendant had no reason to terminate him for allegedly mis-loading a part, the only explanation for his termination is because of his race and his complaint about discrimination. Specifically, Ferguson argues that he did not mis-load a part into a machine he was assigned to, and his comment about his intent to purposely mis-load a part in order to be fired was merely sarcasm.

Ferguson offers no evidence to support his contention. Prior to his termination, he complained of discriminatory conduct to his supervisor only once and Briesemeister immediately addressed the inappropriate behavior. Not only do the number of complaints cut against Ferguson's arguments, but the period of time between the allegedly discriminatory incident and the termination do not support a finding of pretext. Indeed, the complaint was lodged sometime in 2007 and the termination occurred

---

[4] As previously discussed, Ferguson's evidence regarding whether he is similarly situated to other employees falls short of the evidence needed to create a triable issue of fact. Additionally, Ferguson has presented no evidence of suspicious timing, ambiguous statements or other evidence leading to an inference of retaliatory intent.

in April of 2008. The number of complaints and the temporal distance between the complaint and the termination fail to present the circumstances necessary for a reasonable jury to find that Metalcut offered a pretextual reason for Ferguson's termination. Thus, Ferguson cannot establish a causal connection between his protected activity and his termination through direct evidence.

However, Ferguson may also establish retaliation under the indirect method by showing that (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; (3) he was performing his job satisfactorily; and (4) he was treated less favorably than a similarly situated employee who did not complain of discrimination. *Stephens v. Erickson*, 569 F.3d 779, 786-87 (7th Cir. 2009) (citing *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008)). Again, Ferguson has satisfied the first two elements of proving retaliation under the direct method of proof. However, for the reasons previously discussed, Ferguson has failed to show that he was similarly situated to any other employee. Thus, he cannot prevail on his retaliation claim under the indirect method of proof. Accordingly, the defendant's motion for summary judgment with respect to Ferguson's retaliation claim will be granted.

## V. CONCLUSION AND ORDER

Ferguson has failed to create a triable issue of fact with respect to any of his claims. He presented no evidence from which a reasonable juror could conclude that (1) Ferguson was subjected to a hostile work environment; (2) the defendant, through its management, discriminated against Ferguson because of his race; (3) Ferguson was retaliated against for complaining about racial discrimination in the workplace; or (4) Ferguson was unlawfully terminated based on his race. For the reasons that Ferguson has not created a triable issue of fact with respect to his hostile work environment, discrimination, and retaliation claims, and because his claim for unlawful termination is predicated upon the same allegations, Ferguson's unlawful termination claim also fails.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion for summary judgment be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that this action be and hereby is dismissed;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this 4th day of June 2012 at Milwaukee, Wisconsin.

                              **BY THE COURT:**

                              s/ William E. Callahan, Jr.
                              WILLIAM E. CALLAHAN, JR.
                              United States Magistrate Judge